# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DONTRAY CHANEY,**

**Plaintiff,**

**-vs-**                                                          **Case No.  6:04-cv-515-Orl-22KRS**

**CITY OF ORLANDO, FLORIDA and
JONATHAN CUTE,**

**Defendants.**
_____

## ORDER

## I. INTRODUCTION

This cause comes before the Court on Defendant City of Orlando's Motion for Summary

Judgment (Doc. No. 60) and supporting Memorandum of Law (Doc. No. 61), filed on July 18,

2005, to which Plaintiff responded (Doc. No. 76) on July 28, 2005; Defendant Jonathan Cute's

Motion for Summary Judgment (Doc. No. 62) and supporting Memorandum of Law (Doc. No.

63), filed on July 18, 2005, to which Plaintiff responded (Doc. No. 75-1) on July 28, 2005;

Plaintiff's Revised Motion for Partial Summary Judgment on the Affirmative Defenses Filed

by the Defendants (Doc. No. 73), filed on July 19, 2005, to which Defendants responded (Doc.

No. 78) on August 17, 2005; Plaintiff's Response in Opposition to Defendants' Response to

Plaintiff's Motion for Summary Judgment (Doc. No. 80), filed on August 26, 2005; Defendants'

Motion to Strike Plaintiff's Response in Opposition to Defendant's Response to Plaintiff's

Motion for Partial Summary Judgement (Doc. No. 81) and supporting Memorandum of Law

(Doc. No. 82), filed on August 30, 2005; Plaintiff's Motion for Leave to File Plaintiff's

Response to Defendant's Response to Plaintiff's Motion for Summary Judgment (Doc. No. 83),

filed on September 2, 2005, to which Defendants responded (Doc. No. 84) on September 16,

2005.  Having reviewed the motions and memoranda, this Court GRANTS Defendants' Motion

to Strike Plaintiff's Response in Opposition to Defendant's Response to Plaintiff's Motion for

Partial Summary Judgement (Doc. No. 81), DENIES Plaintiff's Motion for Leave to File

Plaintiff's Response to Defendants' Response in Opposition to Plaintiff's Motion for Partial

Summary Judgment (Doc. No. 83), DENIES Plaintiff's Revised Motion for Partial Summary

Judgment (Doc. No. 73), DENIES Defendant Jonathan Cute's Motion for Summary Judgment

(Doc. No. 62), and GRANTS in part and DENIES in part Defendant City of Orlando's Motion

for Summary Judgment (Doc. No. 60).

## II. BACKGROUND

A.     **Factual Background**

        Orlando Police Department Officer Jonathan Cute ("Cute") claims that on the evening

of June 5, 2003, he turned left into the Palms Apartments and made a u-turn after having been

traveling north on Mercy Drive.[1]  Officer Cute claims that he parked his vehicle in the driveway

of the office building so that he could monitor traffic moving north and southbound on Mercy

---

[1]        *See* Deposition of Jonathan Cute ("Cute Deposition") (Doc. No. 65-4) at 28-29.
Officer Cute's deposition was filed in three separate parts as three separate documents on the Court's
Electronic Document Filing System. *See* Doc. Nos. 65-4, 65-5, and 65-6.  For continuity's sake, the
Court will use the original pagination from the deposition instead of the page numbers designated to
the documents by the CM/ECF system.

Drive.[2]  At sometime during the hour of 8 p.m.,[3] in the presence of arguably fading daylight,[4]

Officer Cute allegedly observed a Pontiac Grand AM with its tag light out and "a smoked lens

cover covering the . . . rear tag" as it passed the front of his patrol car.[5]  Officer Cute claims that

he drove directly behind the Grand AM and activated the lights on his cruiser.[6]  The Grand AM

pulled into the parking lot of Mercy Market, a convenience store located at 1430 Mercy Drive

in Orlando, Florida, approximately fifty to sixty feet away from where Officer Cute had been

parked.[7]  Officer Cute notified the police dispatcher that he was stopping a vehicle.[8]  Officer

Cute claims that even though his cruiser was stopped probably only five feet away from the rear

of the Grand AM, he had to sit on the edge of his seat and pull himself up to the steering wheel

in order to see all the numbers and letters on the tag of the Grand AM because of the tag's

---

[2]       *See* Cute Deposition  (Doc. No. 65-5) at 31.

[3]       *See* Cute Deposition  (Doc. No. 65-4) at 30.

[4]       *See* Cute Deposition (Doc. No. 65-4) at 30; *see also* Deposition of Dontray Chaney ("Chaney Deposition") (Doc. No. 65-2) at 14.  Dontray Chaney's deposition was filed in two separate parts as two separate documents on the Court's Electronic Document Filing System.  *See* Doc. Nos. 65-2 and 65-3.  As with Officer Cute's deposition, the Court will use the original pagination from the deposition instead of the page numbers designated to the documents by the CM/ECF system.

[5]       Cute Deposition (Doc. No. 65-5) at 31.

[6]       *See id.* at 33.

[7]       *See id.*; *see also* Second Amended Complaint (Doc. No. 41), ¶ 5 at 2.

[8]       Cute Deposition (Doc. No. 65-5) at 34-35.

position and because of the lens cover.[9]   After making the transmission to the dispatcher,

Officer Cute noticed that the driver of the Grand AM had already exited the vehicle.[10]

The driver of the Grand AM,[11] Dontray Chaney ("Chaney" or "Plaintiff"), admits that

there was a cover on the tag of the Grand AM, but claims that the cover consisted of clear

plastic.[12]   Chaney states that on the evening of June 5, 2003, he noticed a police cruiser entering

the Palms Apartments just as he was exiting the complex to travel to the nearby Mercy

Market.[13]   Chaney states that Officer Cute "hit his high beam lights" as Chaney was "pulling

out" of the apartment complex.[14]   Chaney claims that he then pulled into the Mercy Market

parking lot, placed the vehicle in park, exited the vehicle, and asked Officer Cute the reason for

the stop.[15]   Chaney claims that Officer Cute told him to "get back in the fucking car."[16]  Chaney

asserts that he immediately reentered the vehicle and sat with the door "cracked . . . about an

---

[9]       *See id.*

[10]      *See id.*

[11]      The two-door, 1996 Pontiac Grand AM driven by Dontray Chaney belonged to his cousin, Antawain Greene.  *See* Chaney Deposition (Doc. No. 65-2) at 9; *see also* Affidavit of Antawain Green (Doc. No. 75-7), ¶ 3 at 1-2.

[12]      *See* Chaney Deposition (Doc. No. 65-3) at 36; *see also* Affidavit of Antawain Green (Doc. No. 75-7), ¶ 4 at 2.  Antawain Green states in his affidavit that on the evening of June 5, 2003, "There was a clear plastic cover on the license tag . . . .  This plastic cover did not restrict a person's ability to clearly read the letters and numbers on the license plate."  Affidavit of Antawain Green (Doc. No. 75-7), ¶ 4 at 2.

[13]      *See* Chaney Deposition (Doc. No. 65-2) at 12.

[14]      *Id.*

[15]      *See id.* at 12-13.

[16]      *Id.* at 13.

inch," his feet inside, and his hands in his lap.[17]  Chaney states that his license was in one of his

hands.[18]  According to Chaney, Officer Cute then approached him while shining a flashlight.[19]

Chaney states that he again asked Officer Cute the reason for the stop.[20]  Chaney claims that

Officer Cute then "went straight for the ignition."[21]  Chaney admits that he placed his hands

over the ignition and asked Officer Cute "what he was doing."[22]  Chaney states that Officer

Cute then "put my left hand behind, grabbed me by my neck, like a choke hold, and snatched

me out of the car."[23]  Chaney recalls that Officer Cute "slammed" Chaney's head on the rear

of the car and Chaney's body onto the ground.[24]  Chaney claims that Officer Cute put one of

Chaney's hands in handcuffs and placed a knee on the back of Chaney's neck.[25]  Chaney states

that Officer Cute "put a Taser gun to my head and asked me did I want some of it."[26]  Chaney

---

[17]     *Id.* at 14-16.

[18]     *See id.* at 15.

[19]     *See id.*

[20]     *See id.*

[21]     *Id.*

[22]     *Id.* at 13, 15; *see also* City of Orlando's Memorandum of Law in Support of Summary Judgment (Doc. No. 61) at 2; Jonathan Cute's Memorandum of Law in Support of Summary Judgment (Doc. No. 63) at 2.

[23]     Chaney Deposition (Doc. No. 65-2) at 15.

[24]     *Id.* at 13.

[25]     *See id.*

[26]     *Id.*

further states that Officer Cute "got up and . . . tased me."[27]  Chaney states that only one taser

barb hit him in the back.[28]  Chaney says that after the tasing he was "moving around" and "felt

like [he] was going to die."[29]  Chaney says that he never attempted "to twist or struggle away

from" Officer Cute other than when he was tased, a reaction that Chaney describes as

"something you can't help when some volts are going through you . . . ."[30]  Chaney states that

meanwhile, Officer Cute went to search the Grand AM.[31]  Chaney claims that Officer Cute

returned and deployed his taser a second time.[32]  Chaney states that he "moved over" and the

second taser wire went past him, but that it felt like he was "shot" by the taser more than once.[33]

Chaney alleges that he rolled over, only to be rolled back by Officer Cute, who then stepped on

Chaney's head and applied pressure to it.[34]  According to Chaney, Officer Cute's actions caused

Chaney's face to rub the pavement, leaving Chaney with "scratches and abrasions on his

face."[35]

---

[27]     *Id.*

[28]     *See id.* at 18.

[29]     *Id.* at 17-18.

[30]     *Id.* at 17.

[31]     *See id.* at 13, 18.

[32]     *See id.* at 18.

[33]     *Id.* at 18, 23.

[34]     *See id.* at 13, 18.

[35]     Second Amended Complaint (Doc. No. 41), ¶ 16 at 4.

By contrast, Officer Cute argues that Chaney did not immediately reenter the vehicle when initially ordered to do so.[36] Officer Cute states that he drew his taser and ordered Chaney to get back into the vehicle a second time.[37]  Officer Cute states that when Chaney did not immediately reenter the vehicle after being told a second time to do so, he became concerned that Chaney would either flee or physically challenge him.[38]  Officer Cute recalls that Chaney said "something to the effect of . . . 'don't point that fucking taser at me'" while Officer Cute was closing the distance between them.[39]  Chaney reentered the vehicle as Officer Cute was approaching him.[40]  Officer Cute claims that he asked for Chaney's license, registration, and proof of insurance once he was standing next to Chaney, who was sitting in the driver's seat of the Grand AM with the door open.[41]  Officer Cute says that Chaney was argumentative, wanted to know why Officer Cute had stopped him, and did not immediately attempt to retrieve his license.[42]  Officer Cute claims that he asked for Chaney's information a second time and told Chaney that he would inform Chaney of the reason for the stop as soon as Chaney provided him with that information.[43]  According to Officer Cute, Chaney then attempted to step out of the

---

[36]     *See* Cute Deposition (Doc. No. 65-5) at 37

[37]     *See id.* at 38.

[38]     *See id.*

[39]     *Id.* at 39.

[40]     *See id.*

[41]     *See id.* at 39-40.

[42]     *See id.* at 40.

[43]     *See id.*

vehicle.[44]  Officer Cute alleges that he then advised Chaney that Chaney was under arrest for

"resisting."[45]  Chaney claims that Officer Cute never asked him for his license or registration

and that he never told Chaney that he was under arrest.[46]  Officer Cute further alleges that

Chaney then pushed Officer Cute's hands away and leaned across the passenger's seat towards

the floorboard of the vehicle with his back towards Officer Cute.[47]  Chaney denies that he

attempted to exit the vehicle again, push the door open, or lean over to the other side of the

vehicle.[48]

In the Charging Affidavit, Officer Cute describes Chaney's arrest as follows:

> I took a hold of [Chaney's] left arm and pulled him out of the vehicle. I then placed [Chaney] in a bear hug hold due to the fact that he had tensed his upper torso and arms, preventing me from handcuffing him. I held [Chaney] and called for non-emergency assistance. [Chaney] attempted to twist away from me. I then directed [Chaney] to the ground while still in a bear hug hold.  Once on the ground, I placed my left knee in between [Chaney's] shoulder blades. I ordered [Chaney] to place his hands behind his back. [Chaney] tensed his right arm as I took a hold of it.  I managed to place one handcuff on [Chaney's] right wrist.  Chaney attempted to pull his right hand away.  I drew my department issued taser and cycled it into [Chaney's] lower back. [Chaney] rolled onto his back.  I ordered [Chaney] to roll onto his stomach and place his hands behind his back.  [Chaney] began to raise up from the ground, at which time I cycled my taser a second time.  Officer Michael, Officer Burch, and Sergeant Klem arrived at my location.  Officer Burch and Officer

---

[44]    *See id.* at 42.

[45]    *See* Cute Deposition (Doc. No. 65-5) at 44, (Doc. No. 65-6) at 86; Charging Affidavit (Doc. No. 75-10) at 2.

[46]    *See* Chaney Deposition (Doc. No. 65-2) at 16.

[47]    Cute Deposition (Doc. No. 65-5) at 43, (Doc. No. 65-6) at 86-87; Charging Affidavit (Doc. No. 75-10) at 2.

[48]    *See* Chaney Deposition (Doc. No. 65-2) at 16-17.

> Michael then handcuffed [Chaney] without further incident. [Chaney] received a minor abrasion on his left cheek. I believe this occurred when we went to the ground.[49]

Officer Cute claims that he discharged the taser a second time because he feared that Chaney might regain control of his right hand, possibly enabling Chaney to assault Officer Cute with the loose handcuff.[50] Chaney states that he was still on the ground when the other officers arrived at the scene.[51] Chaney claims that an officer he assumed to be superior to Cute stated that Chaney did not need to be tased anymore and then got Chaney off the ground.[52]

Meanwhile, a crowd of onlookers had gathered during the incident.[53] Chaney alleges that he asked someone in the crowd if he could use his or her phone so he could call his mom.[54] Chaney claims that just as someone asked him for his phone number, Officer Cute grabbed Chaney by his throat, slammed Chaney's head "on the back of the hood" and told Chaney not to "say a fucking word."[55] Officer Cute claims that the crowd of approximately 15-20 people began to get "loud and hostile" once other officers arrived on the scene.[56] Sergeant Klem

---

[49] Charging Affidavit (Doc. No. 75-10) at 2-3; Cute Deposition (Doc. No. 65-6) at 87-88.

[50] *See* Cute Deposition (Doc. No. 65-5) at 49-50.

[51] *See* Chaney Deposition (Doc. No. 65-2) at 19.

[52] *See id.*

[53] *See* Cute Deposition (Doc. No. 65-5) at 53; *see also* Chaney Deposition (Doc. No. 65-2) at 20.

[54] *See* Chaney Deposition (Doc. No. 65-2) at 20-21.

[55] *Id.*

[56] Cute Deposition (Doc. No. 65-5) at 53, 55.

-9-

instructed Officer Cute and the other officers to have Chaney's car towed and to "leave the area as soon as possible."[57]  Chaney was placed in Officer Michael's police car and removed from the area.[58]  Officer Cute, Sergeant Klem, and other officers remained at the scene to wait for a towing company to retrieve the Grand AM driven by Chaney.[59]  Before the car was towed, Officer Cute performed an inventory search of the vehicle.[60]  Officer Cute states that he believed there may be contraband in the vehicle given Chaney's behavior and the defensive posture Chaney took by standing outside the Grand AM before Officer Cute made contact with him.[61]  No contraband was found.[62]  Chaney claims that Officer Cute and/or other officers "scattered the contents of the glove compartment about the interior of the car," "removed the lining of the trunk," and left the contents of the trunk in "disarray."[63]

Chaney was transported to a location on W.D. Judge Drive in Orlando, Florida.[64] Chaney alleges that an officer asked him questions like "How did the fucking taser feel" while

---

[57]     *Id.* at 56.

[58]     *See id.*

[59]     *See id.* at 56-57.

[60]     *See id.* at 59.

[61]     *See id.* at 58-59.

[62]     *See id.* at 60.

[63]     Second Amended Complaint (Doc. No. 41), ¶ 22 at 5.

[64]     *See* Cute Deposition (Doc. No. 65-5) at 61; *see also* Chaney Deposition (Doc. No. 65-2) at 22.

he was sitting in the police cruiser.[65]  Chaney also alleges that the officers eventually had him

sit on the side of the road but that he was placed in the cruiser again once it began to rain hard.[66]

The officers then transported Chaney to a warehouse area located on Princeton Street between

Orange Blossom Trail and John Young Parkway.[67]  Sergeant Klem claims that he directed the

officers to take Chaney to that location because the "warehouse area . . . has a roof," is "open

to the public," and has lights on "24 hours a day," an environment "away from the crowd"

where Sergeant Klem believed he could question Chaney, take pictures of the taser probes, and

conduct a use of force investigation.[68]  Sergeant Klem observed an abrasion on Chaney's cheek

and, per Orlando Police Department policy, took a picture of the abrasion and the location

where taser prongs had connected to Chaney's body.[69]  Officer Cute removed the prongs which,

until that time, were still attached to Chaney's back.[70]  Sergeant Klem estimates that the

investigation took approximately 15 minutes.[71]  Officer Cute subsequently transported Chaney

to the Orange County Correctional Facility.[72]  Chaney alleges that he did not arrive at the

---

[65]     Chaney Deposition (Doc. No. 65-2) at 23.

[66]     *See id.*

[67]     *See id.*; *see also* Cute Deposition (Doc. No. 65-6) at 64; Deposition of Sergeant Stanley Klem ("Klem Deposition") (Doc. No. 74-2) at 16.

[68]     Klem Deposition (Doc. No. 74-2) at 16-17.

[69]     *See id.* at 20, 27-28.

[70]     *See id.* at 28.

[71]     *See id.* at 27.

[72]     *See id.* at 28.

Orange County Correctional Facility until 4:17 a.m. on June 6, 2003, approximately eight hours after the incident first began.[73]

Chaney was issued a citation for operating a vehicle with an obscured license plate in violation of Florida Statute § 316.605 and charged with resisting an officer without violence in violation of Florida Statute § 843.02.[74] "An Orange County Traffic Court Hearing Officer found Chaney not guilty of the charge of driving a car with an obscured license plate . . . ."[75] Additionally, "[t]he criminal charge of resisting an officer without violence was ultimately dropped."[76]

Chaney alleges that "[t]he City of Orlando delegated to the Chief of Police the power and authority to establish policies, customs, practices, and procedures to manage, supervise, control, and train Orlando Police officers."[77] Chaney further alleges that the "City of Orlando, through its Police Chief, made a policy decision to purchase Taser electrical guns and to issue these weapons to its police officers" in 2003 or earlier.[78]  In particular, "[t]he City of Orlando

---

[73]     *See* Second Amended Complaint (Doc. No. 41), ¶ 24 at 5.

[74]     *See id.*, ¶ 28 at 6; *see also* Chaney Deposition (Doc. No. 65-2) at 25; Charging Affidavit (Doc. No. 75-10) at 1; Memorandum of Law in Support of Defendant City of Orlando's Motion for Summary Judgment (Doc. No. 61) at 4.

[75]     Second Amended Complaint (Doc. No. 41), ¶ 30 at 6.

[76]     Memorandum of Law in Support of Defendant City of Orlando's Motion for Summary Judgment (Doc. No. 61) at 4 (citing *State v. Chaney*, Criminal Case No. 48-2003-MM-008414-O in the Ninth Judicial Circuit Court in and for Orange County, Florida).

[77]     Second Amended Complaint (Doc. No. 41), ¶ 32 at 7.

[78]     *Id.*, ¶ 33 at 7.

-12-

Police Department issued a [t]aser to Officer Cute on February 11, 2003."[79]  Officer Cute admits that at one point in time he was on record as having used a taser more than any other officer.[80] Officer Cute stated that he is an "aggressive officer" and that he makes more arrests than others.[81]  Officer Cute attributed the fact that he makes more arrests than most to the fact that he was assigned to work in Pine Hills at the time, an area that Officer Cute claims statistically has more crime.[82]  Officer Cute further stated that because he does "an awful lot of car stops and make[s] contact with folks, . . . sooner or later [he is] going to run into a 'no person,'" a person who refuses to comply with Officer Cute's directions.[83]   Because the Orlando Police Department has records of the use of force investigations that were conducted each time Officer Cute used his taser on a person, Chaney believes that the Police Chief and Officer Cute's supervisors "knew or . . . should have known that Officer Cute's pattern of taser use was exceeding that of any other Orlando Police Department Officer and that [Cute] was using excessive force and arresting people for resisting arrest without violence when he had no grounds to arrest many of these people."[84]

**B.      Procedural History**

---

[79]      Joint Pretrial Statement (Doc. No. 98) at 11.

[80]      *See* Cute Deposition (Doc. No. 65-4) at 23.

[81]      *Id.*

[82]      *See id.*

[83]      *Id.* at 23-24.

[84]      Second Amended Complaint (Doc. No. 41), ¶¶ 36, 38 at 7-8.

The instant case, initially filed in the Ninth Judicial Circuit in and for Orange County, Florida, was removed to this Court on April 13, 2004.[85]  In his Second Amended Complaint (Doc. No. 41), Chaney alleges three counts against Officer Cute for false arrest (Count I), excessive force (Count II), and malicious prosecution (Count III), all in violation of Chaney's Fourth Amendment rights.  Chaney also alleges that the City of Orlando violated his Fourth Amendment rights by: creating and following an official "custom or policy that caused officers, including Officer Cute, to believe that tasers are appropriate substitutes . . . to use in lieu of physical strength or a night stick so that officers would not have to have physical contact with suspects or arrestees whom they believed may not be compliant with their commands" (Count IV); maintaining a "widespread and well-settled unofficial policy" that permitted officers "to stop, seize, arrest, and use unreasonable physical force, including discharging a taser into a citizen, when the officer knew or should have known that he did not have probable cause to believe the person he was arresting . . . had committed a crime" (Count V); and failing to effectively train and supervise its police officers and to correct and clarify the "constitutionally offensive" actions of its officers that has deprived "citizens, and particularly African Americans, including Chaney, of their protected liberty and property rights . . . ." (Count VI).

Chaney seeks damages against both defendants for pain, fear for his life, fear for loss of his freedom, mental anguish, emotional distress, and medical and legal expenses, including punitive damages and reasonable attorney's fees.  Chaney was treated for discomfort in his back

---

[85]     *See generally* Notice of Removal (Doc. No. 1).

and his neck, injuries that Chaney claims he sustained as a result of the events of June 5, 2003.[86] Chaney was also treated for chest pain in 2004, symptoms that a doctor told Chaney were from stress and not getting enough sleep.[87] Chaney says that doctors told him that the chest pains could have been related to the June 5, 2003 incident but that they were not sure.[88]

Both Officer Cute and the City of Orlando have moved for summary judgment. *See generally* Doc. Nos. 60 & 62. In addition, Chaney has moved for partial summary judgment on the Defendants' affirmative defenses. *See generally* Doc. No. 73. Defendants filed a Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 78), to which Plaintiff filed a reply (Doc. No. 80). Defendants' then moved to strike Plaintiff's reply as violative of Local Rule 3.01(b). *See* Doc. Nos. 81 & 82. Plaintiff then filed a Motion for Leave (Doc. No. 83) to file its reply to Defendants' Response in opposition to Plaintiff's Revised Motion for Partial Summary Judgment. Defendants also filed a Response in Opposition to Plaintiff's Motion for Leave (Doc. No. 84).

### III.  STANDARD OF REVIEW

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment

---

[86]     *See* Chaney Deposition (Doc. No. 65-2) at 27.

[87]     *See id.* at 28.

[88]     *See id.* at 30.

bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U. S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds,* 30 F.3d 1347 (11th Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995)). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993), *reh'g and reh'g en banc denied,* 16 F.3d 1233 (11th Cir. 1994).

## IV.  LEGAL ANALYSIS

**A.  Plaintiff's Revised Motion for Partial Summary Judgment and Its Corresponding Motions and Memoranda**

**1.  Procedural Matter**

As a preliminary matter, Defendants' Motion to Strike Plaintiff's response in opposition to Defendants' response in opposition to Plaintiff's Revised Motion for Partial Summary Judgment (Doc. No. 81) is GRANTED. Defendant filed a response (Doc. No. 78) in opposition to Plaintiff's Motion for Partial Summary Judgment, to which Plaintiff replied (Doc. No. 80). The Local Rules for the Middle District of Florida state:

> Each party opposing any written motion or other application shall file and serve, within ten (10) days after being served with such motion or application, a brief or legal memorandum with citation of authorities in opposition to the relief requested. *No other briefs or legal memoranda directed to any such written motion shall be filed or served by any party unless requested by the Court.*

-16-

Local Rule 3.01(b).  Because Plaintiff failed to receive leave of court to file its supplemental

memorandum, Plaintiff is in violation of Local Rule 3.01(b) and its reply to Defendants'

response (Doc. No. 80) is STRICKEN.  Additionally, Plaintiff's Motion for Leave to File

Plaintiff's Response to Defendants' Opposition to Plaintiff's Motion for Partial Summary

Judgment (Doc. No. 83), which came *after* Plaintiff filed its reply and fails to show good cause

as to why Plaintiff's request should be granted, is DENIED.

**2.      Defendants' Evidentiary Concerns**

Chaney moves for partial summary judgment on Defendants' affirmative defenses.  In

their response, Defendants raise evidentiary concerns pertaining to the authenticity of certain

documents filed in support of Chaney's motion:

> The Defendants object to the exhibits filed in support of the Plaintiff's
> Motion for Partial Summary Judgment and Responses to the
> Defendants' Motions for Summary Judgment, with the exception of
> certified copies of deposition transcripts and properly submitted sworn,
> signed affidavits, as they are not affidavits based on personal knowledge
> containing facts as would be admissible in evidence by competent
> affiants, in compliance with Fed. R. Civ. P. 56(e).[89]

The Defendants do not elaborate as to the particular documents with which they take issue;

instead, Defendants state a general objection to "the Amended Notice of Filing . . . [Doc. No.

74], the attachments to the Plaintiff's Response in Opposition to the Motion for Summary

Judgment . . . [Doc. No. 75], and the Supplemental Exhibits . . . [Doc. No. 77]."[90]  The docket

entries at numbers 74, 75, and 77 contain some 18 attachments and/or exhibits between them.

---

[89]      Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary
Judgment (Doc. No. 78) at 9.

[90]      *Id.*

While the better practice would have been for Defendants to list with particularity the documents to which they object, the Court will address each attachment/exhibit in turn. Federal Rule of Civil Procedure 56, which sets forth rules concerning summary judgment, states, in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Fed. R. Civ. P. 56(e). Nevertheless, "[a]s a general rule, the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." *Property Management & Invest., Inc. v. Lewis*, 752 F.2d 599, 605 n.4 (11th Cir. 1985) (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2721 (1983)).

The depositions of Sergeant Stanley Klem (Doc. No. 74-2), Chief Michael McCoy (Doc. No. 74-3), and Officer Edward J. Michael (Doc. No. 74-5) are each missing the signature of the court reporter who recorded the depositions. The Federal Rules of Civil Procedure require that "[u]nless otherwise agreed by the parties," all depositions are to "be taken before an officer" or court-court appointed person authorized to "administer oaths and take testimony." Fed. R. Civ. P. 28 and 30(b)(4). "[T]he officer must certify that the witness was duly sworn by the officer and that the deposition is a true record of the testimony given by the witness. This certificate must be in writing and accompany the record of the deposition." Fed. R. Civ. P. 30(f)(1). Rule 32(d) further states:

> Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with by the officer under Rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.

Fed. R. Civ. P. 32(d).

It appears that Defendants raised their objection with the "reasonable promptness" required in Rule 32(d)(4) given the temporal proximity–less than one month–of the filing of the depositions to the filing of Defendants' objection.  Nevertheless, the omission of the notary's signature on the certification pages of these depositions amounts to a harmless error.  Rule 61, which discusses harmless error, states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed. R. Civ. P. 61.  The error Defendants complain of is a technical one that does not concern the actual contents of the depositions or their accuracy.  Courts have upheld the admissibility of depositions tarnished by merely technical errors.  *See*, *e.g.*, *Kenney v. Paderes*, 2002 U.S. Dist. LEXIS 23819, at *7-8 (D. Haw. Aug. 21, 2002) (Court did not err in using deposition transcripts that were missing the reporter's certification where the cover page of the transcripts contained "the name of the deponent, the case name and civil number, and indicate[d] that it [was] a certified copy."); *United States v. Heinsohn*, 1997 U.S. App. LEXIS 34103, at * 7-8 (6th Cir. Nov. 25, 1997) (an unsigned deposition transcript was admissible and at most

constituted harmless error where it was accompanied by a video of the deposition and "where the defendant could cite no inaccuracies" and "no resulting prejudice"); *Houser v. Snap-on Tools Corp.*, 202 F. Supp. 181, 188 (defendant's failure to notify plaintiff of the filing of depositions as required by Rule 32(d) had no detrimental effects where plaintiff's counsel freely admitted that he saw the depositions prior to trial). "Even if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in rasing such an objection if the party nevertheless knows that the document is authentic." *Fenje v. Feld*, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003). The court in *Fenje* went on to state, "although a deposition transcript should be certified by the court reporter, objecting that the certification is missing is inappropriate and merely obstructive when the objecting party has no basis for believing the transcript is inauthentic or inaccurate." *Id.* In the case at hand, the names of the parties, date, and civil case number appear on the cover of each deposition. The depositions also state that each deponent was duly sworn by the reporters taking the depositions. In addition, counsel for Defendants was present at each of these three depositions. Defendants present no evidence that these depositions are not accurate records of the deponents' testimony. Furthermore, this Court "is able to make thr determination that the deposition transcripts are authenticated" pursuant to Federal Rule of Evidence 901(b)(4) by reviewing the contents of the depositions. *Kenney*, 2002 U.S. Dist. LEXIS 23819, at *8. As such, Plaintiff may rely on the depositions of Sergeant Stanley Klem (Doc. No. 74-2), Chief Michael McCoy (Doc. No. 74-3), and Officer Edward J. Michael (Doc. No. 74-5) in his Revised Motion for Partial Summary Judgment.

Plaintiff submitted additional depositions, including those of Carlos Jackson (Doc. No. 75-2), Raymond King (Doc. No. 75-3), and Nicole Palmer (Docs. Nos. 75-4 and 75-5). Each has proper certification as required by Fed. R. Civ. P. 30 and are admissible for purposes of summary judgment. Additionally, the properly sworn Affidavit of Antawain Green (Doc. No. 75-7) is admissible. Green's Affidavit authenticates the pictures of the Grand AM that are attached to it, and the pictures of the Grand AM are likewise admissible.

Additionally, Plaintiff submitted a copy of the disposition of his hearing in traffic court (Doc. No. 75-6), a tax assessor's survey of the area where the incident occurred (Doc. No. 75-8), a photograph of Chaney's cheek as it appeared after the incident (Doc. No. 75-9), and the Charging Affidavit prepared by Officer Cute (Doc. No. 75-10). Defendants do not specifically contest the authenticity of any of these documents, and each of these documents could easily be authenticated at trial. Because the court may generally consider for purposes of summary judgment any evidence that would be admissible at trial, *Property Management & Invest., Inc.*, 752 F.2d at 605 n.4, Plaintiff may rely on them for purposes of summary judgment.

Chaney also filed numerous Orlando Police Department Defense Tactic Forms documenting Officer Cute's taser usage (Doc. Nos. 77-2, 77-3, and 77-4). "Police reports are 'business records' for purposes of admission into evidence under the Business Records Act, 28 U.S.C. § 1732. To be admissible, however, the report must have been made in the regular course of business and the person who offers the report must be in a position to attest to its authenticity." *United States v. Martin*, 434 F.2d 275, 279 (5th Cir. 1970). Orlando Police Chief Michael McCoy testified in his deposition that a use of force investigation is conducted and a

written report is made each time an officer discharges a taser during his duties.[91]  In describing

the process, Chief McCoy stated that the report would "have the details of the incident and

who's involved and the case number," and that the report would be sent to training, signed by

the officer's supervisor, and filed.[92]  The supervisor also prepares the report and, along with

others, makes a decision as to whether the use of force was appropriate.[93]  Based on Chief

McCoy's testimony, the Defense Tactics Forms, or use of force records, like the ones submitted

by Plaintiff are prepared by the Department in the regular course of its business.  Moreover,

Defendants have presented no evidence to challenge the authenticity of the forms.  The

authenticity of the forms is corroborated by Chief McCoy's testimony and could be more

clearly ascertained by testimony at trial.  Thus, Plaintiff may use the Defense Tactics Forms in

this stage of the proceedings.

Chaney also submitted his own Affidavit (Doc. No. 75-11) for consideration on

summary judgment.  The affidavit was signed by Chaney but not sworn before a notary public.

Rule 56(e) expressly requires that affidavits submitted in support of summary judgment be

sworn.  Because Chaney's affidavit is unsworn, the Court may not consider it for summary

judgment purposes.  *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (Courts may not

consider "an unsworn statement . . . in determining the propriety of summary judgment.").[94]

---

[91]     *See* Deposition of Michael McCoy (Doc. No. 74-3) at 19.

[92]     *Id.* at 20.

[93]     *See id.* at 21.

[94]     Title 28, Section 1746 of the United States Code allows unsworn declarations to have
the "force and effect" of a sworn declaration if the person writing the declaration attests to its truth
"under penalty of perjury." Although Chaney signed his Affidavit, there was nothing in the affidavit

### 3.    Plaintiff's Arguments for Partial Summary Judgment

Defendants assert that because Plaintiff's consumption of cocaine and marijuana "likely led to the health conditions he claims are a result of the incident at bar," Plaintiff failed to mitigate his damages.[95]  Defendants also assert "that all or a portion of the Plaintiff's damages have been paid or are payable from collateral sources."[96]  Plaintiff avers that the record is devoid of evidence to support Defendants' affirmative defenses; however, Plaintiff makes no argument and cites no authority in support of his position.  Plaintiff filed the deposition of Ismat Irfan, M.D., the doctor who treated Chaney on May 21, 2004 when Chaney sought treatment for left-sided chest pain at a hospital emergency room,[97] in support of his motion, but fails to cite to any portions of Dr. Irfan's deposition.  A review of the deposition shows that Chaney's urine drug screen tested positive for "cannabinoid substance," a factor that Dr. Irfan believes may have contributed to Chaney's chest pain.[98]  Dr. Irfan's testimony presents a genuine issue of material fact as to whether Plaintiff failed to mitigate his damages.  As such, Plaintiff fails to satisfy his burden and summary judgment on these affirmative defenses is improper.

---

stating that Chaney declared the truth of the matters set within the affidavit under penalty of perjury. Chaney's affidavit is thus inadmissible.

[95]    Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. No. 78) at 2.

[96]    Plaintiff's Revised Motion for Partial Summary Judgment (Doc. No. 73) at 1; *see also* Answer and Affirmative Defenses of City of Orlando (Doc. No. 39), ¶ 9 at 3; Answer and Affirmative Defenses of Jonathan Cute (Doc. No. 40), ¶ 7 at 2-3.

[97]    *See* Deposition of Ismat Irfan, M.D. (Doc. No. 79-2) at 5.

[98]    *Id.* at 6-8.

Plaintiff additionally argues for summary judgment against the affirmative defenses that probable cause existed for the action taken against Plaintiff and that Officer Cute was justified in using force.  Florida law prohibits law enforcement officers from using force in making an arrest if the officer knows the arrest to be unlawful.  *See* Fla. Stat. § 776.051(2).  Under Plaintiff's theory, Officer Cute's use of force was not justified because Plaintiff's arrest, unsupported by probable cause, was unlawful.  Plaintiff also asserts that the affirmative defense that Officer Cute was acting under the lawful exercise of his law enforcement duties in his official capacity does not shield either Officer Cute or the City of Orlando from liability. Because the Defendants have also moved for summary judgment on the same issues presented by Plaintiff, for efficiency's sake, the Court will address those issues in greater detail below.

### B.    Officer Cute's Motion for Summary Judgment

In his motion for summary judgment, Officer Cute argues that (1) he is entitled to qualified immunity from Chaney's claims under 42 U.S.C. § 1983, (2) Chaney's § 1983 claims are barred because probable cause existed to arrest and detain Chaney, and (3) Officer Cute did not use excessive force in arresting and detaining Chaney.

Qualified immunity provides a complete defense from suit and from liability for government officials who are sued in their individual capacities for the performance of their discretionary functions.  *See Storck v. City of Coral Springs*, 354 F.3d 1307, 1313-14 (11th Cir. 2003).  Qualified immunity's protection exists as long as the official's conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1313 (quoting *Lassiter v. Ala. A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149

-24-

(11th Cir. 1994) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The

purpose of qualified immunity:

> is to allow government officials to carry out their discretionary duties
> without the fear of personal liability or harassing litigation, protecting
> from suit all but the plainly incompetent or one who is knowingly
> violating the federal law.  Because qualified immunity is a defense not
> only from liability, but also from suit, it is important for a court to
> ascertain the validity of a qualified immunity defense as early in the
> lawsuit as possible.

*Storck*, 354 F.3d at 1314 (quoting *Lee v. Ferraro*, 132 F.3d 1359, 1370 (11th Cir. 1998)

(internal citations omitted)).

A qualified immunity analysis requires first that the public official prove that he or she

"was acting within the scope of his [or her] discretionary function when the allegedly

unconstitutional acts took place." *Storck*, 354 F.3d at 1314 (quoting *Courson v. McMillian*, 939

F.2d 1479, 1487 (11th Cir. 1991).  Here, Officer Cute stipulates that "he was and is employed

by the City of Orlando as a law enforcement Officer in the Orlando Police Department"and that

he was acting "in his official capacity at the time of all actions taken involving the Plaintiff."[99]

Once established that the public official was acting within the scope of his or her discretionary

authority, "the burden shifts to the plaintiff to establish that qualified immunity does not apply."

*Storck*, 354 F.3d at 1314.

To determine whether qualified immunity applies, the Court must first ask the threshold

question of whether the facts alleged, taken in the light most favorable to Plaintiff, show that

Officer Cute's conduct violated a constitutional right.  *See Dalrymple v. Reno*, 334 F.3d 991,

---

[99]    Answer and Affirmative Defenses of Jonathan Cute (Doc. No. 40), ¶¶ 1, 12.

995 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Next, if Plaintiff's

Complaint can be said to allege the violation of a constitutional right, the Court must determine

whether that right was clearly established at the time of the violation.  *See id.*

### 1.  False Arrest

Plaintiff argues that the initial material fact at issue in this case is whether the Grand

AM's license plate was obscured by a lens cover as claimed by Officer Cute.[100]  Plaintiff also

questions whether Officer Cute was in a position to have seen the tag.[101]  In so doing, Plaintiff

essentially challenges the validity of the stop.  Plaintiff points out that a hearing officer found

Chaney not guilty of driving with an obscured license plate.  Nevertheless, Officer Cute still

may have been justified in stopping Chaney even if Chaney's license plate was not obscured

and the stop was based on a mistake of fact.  *See United States v. Chanthasouxat*, 342 F.3d

1271, 1276 (11th Cir. 2003).  "A traffic stopped [sic] based on an officer's incorrect but

reasonable assessment of facts does not violate the Fourth Amendment."  *Id.*  Thus, for purposes

of a Fourth Amendment analysis, the question is whether Officer Cute's purported mistake of

fact was a reasonable one.  *Id.* at 1277.

Upon reviewing the record, this Court finds that there is no genuine issue of material

fact as to whether the license tag of the vehicle driven by Chaney was obscured.  Plaintiff

submitted a photograph[102] of the rear of the vehicle purporting to show the tag as it appeared

---

[100]     *See* Plaintiff's Response to Officer Cute's Motion for Summary Judgment (Doc. No. 75-1) at 3-4.

[101]     *See id.* at 4-6.

[102]     *See* Doc. No. 75-7.

on June 5, 2003.  The photograph is supported by the sworn affidavit of the owner of the vehicle, Antawain Green, who states that he took photographs of his vehicle immediately after retrieving it from the place where the Orlando Police Department impounded it on June 5, 2003. Based on the appearance of the tag in the picture, the Court finds that no reasonable officer could have concluded that the license tag was obscured in violation of Florida Statute § 316.605.  Section 316.605 requires that license plates be free from any "obscuring matter[] so that they will be plainly visible and legible at all times 100 feet from the rear or front."  Fla. Stat. § 316.605(1).  The picture of the license tag shows nothing that would impede the tag's visibility or legibility from that distance.  Moreover, even if Officer Cute had made a mistake about the visibility of the tag, the picture shows that any such mistake would not be a reasonable one: the numbers and letters on the license plate are plainly visible.  Additionally, Officer Cute stated in his deposition that Chaney's tag light was out; however, Chaney was not given a citation for violating the statutory provision that requires tag lights.  *See* Fla. Stat. § 316.221(2).  Chaney was issued a citation for driving with an obscured license tag, an offense that a hearing officer later found Chaney not guilty of committing.  Given that Officer Cute has presented no evidence to rebut the evidence presented by Plaintiff that would show that the tag was not obscured during the incident on June 5, 2003, the Court finds that the initial traffic stop was invalid.

Next, Plaintiff contends that "Officer Cute knew when he charged Chaney with resisting arrest without violence that he did not have any reasonable basis to believe that Chaney had

committed a crime for which he could arrest Chaney."[103]  The Charging Affidavit (Doc. No. 75-10) shows that Chaney was actually charged with "resisting without violence" pursuant to § 843.02 of the Florida Statutes.  Section 843.02 reads, in pertinent part:

> Whoever shall resist, obstruct, or oppose any officer . . . or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

A plain reading of the statute shows that this provision is applicable to persons resisting, obstructing, or opposing any officer in the lawful execution of *any* legal duty, not solely in the lawful execution of an arrest.  Therefore, Chaney's actions could have constituted "resisting" before and/or during the effectuation of his arrest if Chaney was found to be resisting, obstructing, or opposing Officer Cute during the lawful execution of a legal duty.

"Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment."  *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003).  Nevertheless, "officers who make an arrest without probable cause are still 'entitled to qualified immunity if there was arguable probable cause for the arrest.'"  *Id.* at 1089 (citations omitted).  Thus, the issue "is not whether probable cause existed but instead whether there was arguable probable cause."  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could–not necessarily would–have believed that probable cause was present."  *Id.*  "Probable cause to arrest exists '"when the facts and circumstances within the officer's

_____

[103]     Second Amended Complaint (Doc. No. 41), ¶ 42 at 9.

-28-

knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Draper v. Reynolds*, 369 F.3d 1270, 1276 (11th Cir. 2004) (quoting *Durruthy*, 351 F.3d at 1088).

"Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime." *Crosby*, 394 F.3d at 1333. Under Florida law, a person commits the offense of resisting without violence if he or she "resist[s], obstruct[s], or oppose[s] any officer" engaging "in the lawful execution of any legal duty, without offering or doing violence to the person of the officer . . . ." Fla. Stat. § 843.02.

The Court finds that there are material issues of fact as to whether Chaney resisted, obstructed, or opposed Officer Cute either in the events leading up to or during Chaney's arrest. In order for Officer Cute to enjoy qualified immunity from Chaney's false arrest claim, the arrest must have been a valid one justified by arguable probable cause. Florida courts have held that "[t]he legality of the arrest," a jury determinable issue, "is an element of the offense of resisting arrest without violence." *Bratcher v. State*, 727 So. 2d 1114, 1117 (Fla. 5th DCA 1999) (citing *Espinosa v. State*, 686 So. 2d 1345, 1347 (Fla. 1996)). Although Chaney was arrested for his actions that allegedly constituted resisting *prior to* Officer Cute's attempt to arrest him, Chaney may have been justified in his alleged resistance once the encounter evolved into an arrest. Florida law is clear that there is "no right to resist arrest by the use of force." *Lowery v. State*, 356 So. 2d 1325, 1326 (Fla. 4th DCA 1978); *see also* Fla. Stat. § 776.051. Nevertheless, Chaney "has a common law right to resist an unlawful arrest without the use of

violence." *Lee v. State*, 368 So. 2d 395, 396 (Fla. 3d DCA 1979); *see also K.Y.E. v. State*, 557 So. 2d 956, 957 (Fla. 1st DCA 1990) ("[T]he common law rule still remains that a person may lawfully resist an illegal arrest without using any force or violence."). Because there are material questions of fact as to whether Chaney's actions constituted resisting, it is not possible at this stage in the proceedings to say that his arrest was a lawful one. Without the determination that Chaney's arrest was lawful, it is impossible to say that Chaney was unjustified in his alleged resistance or that Officer Cute is entitled to qualified immunity and, therefore, summary judgment on Chaney's false arrest claim.

Additionally, Florida law requires "[a] peace officer making an arrest without a warrant [to] inform the person to be arrested of the officer's authority and the cause of the arrest except when the person flees or forcibly resists before the officer has an opportunity to inform the person or when giving the information will imperil the arrest." Fla. Stat. § 901.17. Officer Cute states that he told Chaney that Chaney was under arrest for resisting when Chaney allegedly attempted to exit his vehicle after twice asking Chaney for his information. By contrast, Chaney claims that Officer Cute never informed Chaney of the reason for the stop or that Chaney was under arrest. Chaney claims that he never attempted to exit the vehicle or leaned towards the passenger side of the vehicle. Chaney states that prior to the arrest, he was sitting in the vehicle trying to ask Officer Cute the reason for the stop. Under Chaney's "version of the facts, the arrest would have been illegal under Florida law" because Officer Cute never informed Chaney of his authority or of the reason for the arrest when Officer Cute had a safe opportunity to do so. *Leslie v. Ingram*, 786 F.2d 1533, 1535 (11th Cir. 1986).

-30-

Accordingly, Officer Cute's Motion for Summary Judgment is DENIED as to Plaintiff's claim for false arrest.

## 2.     Excessive Force

"[C]laims of excessive force in the context of arrests or investigatory stops should be analyzed under the Fourth Amendment's 'objective reasonableness standard . . . .'" *Saucier v. Katz*, 533 U.S. 194, 204 (2001) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). The Supreme Court stated in *Saucier*:

> Because "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation," the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective. We set out a test a test [in *Graham*] that cautioned against the "20/20 vision of hindsight" in favor of deference to the judgement of reasonable officers on the scene. *Graham* sets forth a list of factors relevant to the merits of the constitutional excessive force claim, "requiring careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. . . . An officer might correctly perceive all the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier*, 533 U.S. at 205 (internal citations omitted). The Eleventh Circuit also espoused factors that a court must examine in evaluating an excessive force claim, including: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith

or maliciously and sadistically." *Leslie*, 786 F.2d at 1536; *see also Draper*, 369 F.3d at 1277-78 (11th Cir. 2004).

  The Court finds that there are material issues of fact regarding the amount of force used in effecting Chaney's arrest.  Summary judgment on an excessive force claim is inappropriate where the need for the application of the force and the officer's good faith is not established. *See Leslie*, 786 F.2d at 1536.  In the case at hand, it is not clear whether Officer Cute's use of the taser gun was needed or whether the use of the taser gun constituted a reasonable amount of force given the circumstances of the arrest.  It is also disputed whether Officer Cute ever told Chaney that he was under arrest.  This situation is unlike the situation in *Draper* where an officer was justified in using a singular taser strike against an arrestee when the arrestee was "hostile, belligerent, uncooperative," refused to retrieve personal identification documents when asked to do so "no less than five times," accused the officer of harassment, "used profanity, moved around and paced in agitation, . . . repeatedly yelled at the officer," and refused to comply with the officer's verbal commands, including an arrest command.  369 F.3d at 1278.  By contrast, Chaney was sitting inside his vehicle.  Officer Cute alleges that Chaney was argumentative and Chaney admits that he asked Officer Cute the reason for the stop more than once.  However, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-463 (1987).  While Chaney admits that he covered the vehicle's ignition to prevent Officer Cute from removing keys, it is not clear that Chaney's actions were unjustified given the circumstances surrounding the stop.  Using the "totality of the circumstances" standard utilized in *Draper*, 369 F.3d at

1278, it is not clear that Officer Cute's use of his taser and of other physical force was in good faith or with malice.

That it is rare for a police officer acting within the scope of his duties to not receive the protections of qualified immunity is not lost on this Court.  Nevertheless, "[q]ualified immunity is, as the term implies, qualified.  It is not absolute.  It contemplates instances in which a public official's actions are not protected."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1233 (11th Cir. 2004) (citation omitted).  Accordingly, Officer Cute's Motion for Summary Judgment is DENIED as it pertains to Plaintiff's excessive force claim.

### 3.    Malicious Prosecution

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures."  *Kingsland*, 382 F.3d at 1234 (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003), cert. denied, 540 U.S. 879, 157 L. Ed. 2d 143, 124 S. Ct. 298 (2003)).  Florida law requires that six elements be established to prove a claim of malicious prosecution:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Id.* (citing *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002)).

Chaney easily meets the first four elements of a common law malicious prosecution claim.  Officer Cute claims that he acted in good faith and with cause to believe that Chaney had committed a traffic violation.  However, "if a jury believes Plaintiff's version of the facts, it could reasonably find that" Officer Cute "acted with malice, bad faith, or in a manner exhibiting wanton and willful disregard of" Chaney's "rights, safety, or property."  *Walcott v. City of St. Petersburg*, 2000 U.S. Dist. LEXIS 8495, at *14 (M.D. Fla. Apr. 11, 2000).  For purposes of Officer Cute's motion for summary judgment, all inferences must be drawn in the light most favorable to Chaney.  *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).  Accepting Chaney's version of the facts as true, summary judgment is improper here as there are genuine issues of material fact.  Hence, Officer Cute's Motion for Summary Judgment is DENIED insofar as it relates to Chaney's claim for malicious prosecution.

**C.     The City of Orlando's Motion for Summary Judgment**

The City of Orlando contends that it is likewise entitled to summary judgment because (1) the City of Orlando cannot be liable for Chaney's § 1983 claims under the doctrine of *respondeat superior*, (2) the Plaintiff failed to allege sufficient facts to establish the City's liability for failure to supervise, and (3) Officer Cute's actions were justified by probable cause.

The City of Orlando (the "City") is correct in arguing that it cannot be held vicariously liable for the tortious acts of its employees under the doctrine of *respondeat superior*.  *See Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7 (1978) (upholding an earlier decision "that the doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees").  Therefore, the City's Motion for

-34-

Summary Judgment (Doc. No. 60) is GRANTED insofar as the City seeks to be released from any vicarious liability claim.[104]  Nevertheless, the City's Motion for Summary Judgment is DENIED as to the issue of whether the City had a custom or policy, either officially or unofficially, that allowed its officers to use taser guns in ways that subvert the Fourth Amendment rights of its citizens.

Municipalities may be held liable under § 1983 "only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  "'It is only when the "execution of the government's policy or custom . . . inflicts the injury" that the municipality may be held liable under § 1983.'"  *Id.* (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting) (quoting *Monnell*, 436 U.S. at 694).  Thus, the Court must inquire as to "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton*, 489 U.S. at 385.  The municipal policy or custom need not be an official one.  "[Section] 1983 liability may be imposed on a municipality based on 'governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'"  *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (quoting *Floyd v. Waiters*, 133 F.3d 786, 795 (11th Cir. 1998)).  The plaintiff must "establish a widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law.'"  *Floyd*, 133 F.3d at 795 (quoting

---

[104]     The City also argues that it is entitled to summary judgment because Officer Cute acted with probable cause.  This argument is moot given the inapplicability of the doctrine of *respondeat superior*.

*Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). "'[a] longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.'" *Floyd*, 133 F.3d at 795 (quoting *Brown*, 923 F.2d at 1481). Therefore, Chaney can maintain his § 1983 action against the City of Orlando if he "can demonstrate that a custom existed, that the custom caused a deprivation of [his] federal rights, and that the custom was so widespread" that the City of Orlando "was aware of the custom but failed to end it." *Floyd*, 133 F.3d at 795.

Plaintiff submitted copies of seventeen (17) Defensive Tactics Forms (*See* Doc. Nos. 77-2, 77-3, and 77-4) that document Officer Cute's taser usage from February 17, 2003 until the incident involving Chaney on June 5, 2003. That Officer Cute used his taser 16 times prior to the incident with Chaney in such a short time period raises a question of fact as to whether the City did have a policy or custom pertaining to taser usage that violated Plaintiff's Fourth Amendment rights.

The Court also finds that there genuine question of material fact as to whether the City was deliberately indifferent in the training and supervision of its officers. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. The Supreme Court explained:

> This rule is most consistent with our admonition in *Monell*, 436 U.S. at 694, and *Polk County v. Dodson*, 454 U.S. 312, 326 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom"

that is actionable under § 1983.   As Justice Brennan's opinion in
*Pembaur v. Cincinnati*, 475 U.S. 469, 483-484 (1986) (plurality) put it:
"[M]unicipal liability under § 1983 attaches where–and only where–a
deliberate choice to follow a course of action is made from among
various alternatives" by city policymakers. *See also Oklahoma City v.
Tuttle*, [471 U.S. 808, 823 (1985)] (opinion of Rehnquist, J.). Only
where a failure to train reflects a "deliberate" or "conscious" choice by
a municipality–a "policy" as defined by our prior cases–can a city be
liable for such a failure under § 1983.

*City of Canton*, 489 U.S. at 388-389.   The Eleventh Circuit has recognized "that a
municipality's failure to . . . supervise may [also] be actionable under section 1983 if it
evidences a 'deliberate indifference'–again, by policymaking officials–to the rights of the
inhabitants of the municipality because 'such a shortcoming [may] be properly thought of as
a city 'policy or custom.'" *Floyd*, 133 F.3d at 796 (internal citations omitted).

Chief McCoy testified that the period of time for an officer's use of force records to be
reviewed annually would occur during an "evaluation period."[105]  However, the supervisors who
are required to conduct the evaluations are not directed by any written policy to review the
documents detailing an officer's taser usage for the previous year.[106]  Chief McCoy further
attested to the fact that "when an officer comes up for review, . . . the extent to which he's been
using [a] taser" is not necessarily known.[107]  Chief McCoy stated:

The records are there, I mean, but it would be like asking how many
times he wrote a traffic accident or how many times he had somebody
run from him, how many times he–you know, you pick it.  It's part of his

---

[105]   Deposition of Michael McCoy (Doc. No. 74-3) at 20.

[106]   *Id.* at 20-21.

[107]   *Id.*

> duties, you know.  There's no, he's evaluated for his ability to do the job
> and that sort of thing.[108]

Under the system of supervision described by Chief McCoy, rogue taser usage could go virtually unchecked.  While the Department conducts use of force investigations, those investigations appear to be isolated from the officer evaluation process, a process that goes hand in hand with officer supervision.  Based on these facts, summary judgment for the City of Orlando on the issue of deliberate indifference in officer training and supervision would be inappropriate.

## V.  CONCLUSION

Based on the foregoing, it is ordered as follows:

1.      Defendants' Motion to Strike Plaintiff's Response in Opposition to Defendant's Response to Plaintiff's Motion for Summary Judgement (Doc. No. 81) is GRANTED. Plaintiff's Response  (Doc. No. 80) in opposition to Defendants' response in Opposition to Plaintiff's Revised Motion for Partial Summary Judgment is hereby STRICKEN.  Plaintiff's Motion for Leave to File Plaintiff's Response to Defendant's Response to Plaintiff's Motion for Summary Judgment (Doc. No. 83) is DENIED.

2.      Plaintiff's Motion for Partial Summary Judgment (Doc. No. 66) is STRICKEN. Plaintiff's Revised Motion for Partial Summary Judgment (Doc. No. 73) is DENIED.

3.      Defendant Jonathan Cute's Motion for Summary Judgment (Doc. No. 62) is DENIED.

---

[108]      *Id.* at 21.

4.     Defendant City of Orlando's Motion for Summary Judgment (Doc. No. 60) is GRANTED insofar as the City is not under the doctrine of *respondeat superior*. Defendant City of Orlando's Motion for Summary Judgment is DENIED in all other respects.

5.     This case will go forward to trial on the following federal civil rights claims: (1) As to Officer Cute, trial will proceed on Chaney's claims for false arrest (Count I), excessive force (Count II), and malicious prosecution (Count III); (2) As to the City of Orlando, trial will proceed on Chaney's claims against the City for creating and following an official custom or policy which violated Plaintiff's Fourth Amendment rights (Count IV), maintaining a widespread and well-settled unofficial custom or policy which violated Plaintiff's Fourth Amendment rights (Count V), and failing to train and supervise its officers with deliberate indifference to Plaintiff's Fourth Amendment rights (Count VI).

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on December 2, 2005.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party